# McGrogan Will

*Fred T. Cadmus, 3rd,* for proponent.

*Robert W. Lentz,* for contestants.

MACELREE, P. J., August 7, 1961.—This court, on May 31, 1961, filed an opinion and decree granting certain issues and refusing others in the above-entitled

matter, to which exceptions were filed on behalf of the contestants and on behalf of the proponent. . . .

On behalf of the proponent, exceptions were filed to the granting of such issues as were directed in the decree of May 31, 1961, and also to the consideration by the hearing judge of the testimony of Father Faunce, coupled with a request for reargument as appears in the motion filed on behalf of the proponent.

Such reargument was allowed and had on August 3, 1961.

Upon a further review of the testimony and a consideration of the authorities submitted by counsel for the proponent, this court finds no occasion to alter its conclusions of law heretofore reached.

In reaching such conclusions, this court did give consideration to the testimony of Father Faunce.

Counsel for the proponent contends that such testimony was improperly admitted in view of the provisions of the Act of October 14, 1959, P. L. 1317, which provides as follows:

"No clergyman, priest, rabbi or minister of the gospel of any regularly established church or religious organization, except clergymen or ministers, who are self-ordained or who are members of religious organizations in which members other than the leader thereof are deemed clergymen or ministers, *who while in the course of his duties has acquired information from any person secretly and in confidence* shall be compelled, or allowed without consent of such person, to disclose that information in any legal proceeding, trial or investigation, before any grand jury, traverse or petit jury, or any officer thereof, before the General Assembly or any committee thereof, or before any commission, department or bureau of this Commonwealth, or municipal body, officer or committee thereof." (Italics supplied.)

While differing in phraseology from the statutes in many other States, we believe that it was intended to clarify existing case law in Pennsylvania.

An exhaustive research by this court fails to disclose any reported case in which the provisions of this statute have been construed.

Prior to its enactment, the only reported Pennsylvania case which has come to the attention of this court is Shaeffer's Estate, 52 Dauph. 45, in which the court admitted evidence from such a source as not being penitential in character.

The question involved is discussed at length in Wigmore on Evidence, §§2394, 2395 and 2396.

In the opinion of this court, in order to render the communication a privileged one in the instant case, it must have been made to the priest in the course of his duties, as spiritual adviser, and it must have been given secretly and in confidence.

The statement alleged to have been made was on an occasion when the priest called at the home of decedent to receive certain contributions which he had been advised by one of his associates decedent wished to make in support of the financial needs of the parish of which she was a member.

Whether, in fact, the conversation was in secret does not appear inasmuch as the witness was not sure whether anyone other than decedent was present or not.

The situation arose by reason of delivery by Miss McGrogan to the priest of two checks, totaling $5,000, coupled with a voluntary expression from decedent to the effect that the church would get all of her money upon her death.

The two checks themselves were no secret in that they had been prepared at the Dime Savings Bank of Chester County, Pa., were brought to decedent at her

home and by her personally delivered to the priest, with the request that only a small portion thereof should appear in the parish publication as a publicized gift.

When inquiry was made by the witness as to the existence or nonexistence of a will making provision for the church as a beneficiary of her estate, decedent declared unequivocally that she had no will and upon inquiry being made by the priest, that she did not desire him to arrange for a lawyer to prepare such an instrument.

Father Faunce was not examined at any considerable length by counsel for the proponent as to the scope of his duties as an assistant to the rector of St. Agnes Church but, conceding that it was a communication made to him in the course of his duties, in the opinion of this court it was in no sense a confidential confession to a spiritual adviser from whom decedent was either seeking spiritual advice or absolution.

No question exists as to the validity of the gift, the only question being as to whether decedent's declaration that she had no will was privileged as being a secret and confidential disclosure.

Such a privilege "cannot be said to have been recognized as a rule of the common law either in England or in the United States."

Privilege between attorney and client is predicated upon the necessity of disclosures in order to be properly advised; privilege between physician and patient is predicated upon the necessity for such disclosures in order to be properly treated; by analogy, privilege between priest and penitent is properly predicated upon the necessity for such disclosures in order either to conform to church discipline or to be afforded spiritual advice.

This court concludes that the statement alleged to have been made by decedent to Father Faunce was not one made secretly and in confidence as contemplated by the statute with which we are concerned. . . .

The exceptions on behalf of the proponent are, therefore, dismissed. . . .